## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HFR, INC. f/k/a Hart Freeland
Roberts, Inc.,

        Plaintiff,

        v.                          Case No.  05-2300-JWL

VICTOR H. HILDYARD II, M.D.,
et al.,
        Defendants.
_____

### MEMORANDUM AND ORDER

In this lawsuit plaintiff HFR, Inc. alleges that it was retained by defendants to perform architectural services and that defendants abruptly terminated HFR's services and have not made payment in accordance with the parties' agreement.  The clerk entered default against all of the defendants and the court subsequently entered an order granting a default judgment against them in the amount of $81,826.09.  This matter is now before the court on the motions of defendants Victor H. Hildyard II, M.D., Brenda Hildyard, and Robert Smith to set aside the default judgment (docs. #21 & #24).  For the reasons explained below, the Hildyards' motion is granted and Mr. Smith's motion is set for an evidentiary hearing at **9:30 a.m. on Thursday, January 3, 2008**, concerning the disputed factual circumstances surrounding Mr. Smith's alleged transmission of a letter to counsel for HFR after he was served with the summons and second amended complaint.

## BACKGROUND

Plaintiff HFR, Inc. originally filed this lawsuit against defendant Northwest Kansas Regional Medical Center, LLC (Center) alleging non-payment under an architectural services contract for a healthcare facility to be built in Colby, Kansas. HFR subsequently filed a first amended complaint adding Victor H. Hildyard II, M.D. and Brenda Hildyard as defendants, asserting corporate veil-piercing allegations against them. Later, HFR filed a second amended complaint adding Robert Smith as a defendant. This second amended complaint alleges that Mr. Smith contracted with HFR on behalf of Center and that he is personally liable for his actions because he knew that Center was a non-existent principal that was incapable of contracting with HFR.

Each and every one of the defendants failed to appear in this action and the clerk entered default against them (docs. #9, #14 & #17). On December 13, 2006, the court issued an order granting default judgment against them in the amount of $81,826.09. Approximately nine months later, on September 10, 2007, defendant Smith filed a motion to set aside the default judgment against him (doc. #21). On October 12, 2007, the Hildyards filed a motion to set aside the default judgment against them (doc. #24). Therein, the Hildyards and Mr. Smith argue that the court should set aside the default judgment against them on various grounds provided in Rule 60(b) of the Federal Rules of Civil Procedure.

2

# DISCUSSION

For the reasons explained below, the court rejects defendants' argument that the judgment is void because the court lacked subject matter jurisdiction over this action. Therefore, the defendants are not entitled to relief under Rule 60(b)(4).  The Hildyards have made a sufficient showing that their motion was filed within a reasonable time, that their failure to appear in the action was the result of excusable neglect, and that they have a potentially meritorious defense.  Consequently, the could will grant their motion pursuant to Rule 60(b)(1) and set aside the judgment against them.  The court is also satisfied that Mr. Smith filed his motion within a reasonable time, that he has potentially meritorious defenses, and that he might not have been given notice to which he was entitled under Rule 55(b)(2). Resolution of this issue, however, requires the court to resolve a disputed factual issue and, to that end, the court hereby sets this matter for an evidentiary hearing.

## I.    Subject Matter Jurisdiction

Rule 60(b)(4) provides that the court may relieve a party from a final judgment if "the judgment is void."  A judgment is void under Rule 60(b)(4) if the rendering court was powerless to enter it.  *Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir. 2000).  This occurs "only if the court which rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process of law." *United States v. Buck*, 281 F.3d 1336, 1344 (10th Cir. 2000).  The court does not have discretion with respect to a motion for relief from a void judgment pursuant to Rule 60(b)(4), as relief

from a void judgment is mandatory. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) (per curiam).

Federal courts may exercise jurisdiction over an action involving parties of diverse citizenship "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Here, the parties dispute whether plaintiff adequately alleged the existence of complete diversity between the parties and whether the $75,000 amount-in-controversy requirement is satisfied.

A.    *Complete Diversity*

As interpreted, the diversity statute provides federal courts with jurisdiction only if there is no plaintiff and no defendant who are citizens of the same state. *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000). It "attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *Depex Reina 9 P'ship v. Texas Int'l Petroleum Corp.*, 897 F.2d 461, 463 (10th Cir. 1990). Here, there is complete diversity between HFR (a Tennessee corporation with its principal place of business in Tennessee) and the Hildyards (who are Kansas citizens) and defendant Smith (who is a Utah citizen). The disputed issue is whether plaintiff's allegation concerning the citizenship of defendant Northwest Kansas Regional Medical Center, L.L.C. is sufficient to establish that this defendant is diverse from HFR.

For purposes of determining diversity jurisdiction, a limited liability company is a citizen of each state of which a member is a citizen. *See Pramco, L.L.C. v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006) (noting that every circuit to consider the issue

4

has held that the citizenship of a limited liability company is determined by the citizenship of all of its members).  The court examines the face of the complaint to determine whether a party has adequately presented facts sufficient to establish diversity jurisdiction.  *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993).  HFR's complaint alleges that "no members of [defendant Northwest Kansas Regional Medical Center, L.L.C.] are domiciled in the State of Tennessee and all members are residents of the State of Kansas."  The Hildyard defendants focus on the fact that plaintiff affirmatively alleged only that the members of the LLC were "residents," not "citizens," of the state of Kansas.  A defective allegation of "residence" rather than "citizenship" does not require dismissal where it is otherwise clear that diversity of citizenship exists.  *DeVries v. Starr*, 393 F.2d 9, 11 (10th Cir. 1968).  Under these circumstances, the court may examine the record to determine whether the allegation of residency was intended to mean that the party was a citizen of that state.  *Kelleam v. Maryland Cas. Co.*, 112 F.2d 940, 943 (10th Cir. 1940), *rev'd on other grounds*, 312 U.S. 377 (1941); *see also Gaines*, 8 F.3d at 729 (where allegations in pleadings are inadequate the court reviews the record to determine whether diversity exists).

Here, it is clear from the record that HFR's allegation that the members of the LLC were residents of Kansas was intended to mean that they are citizens of Kansas.  The only members of the LLC who are listed on the Limited Liability Company Annual Report that plaintiff's counsel obtained from the Kansas Secretary of State are Mr. and Mrs. Hildyard with their addresses listed as being in Colby, Kansas.  Although their residence is not the equivalent of citizenship, their place of residence is prima facie evidence of domicile, *State*

*Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *Walden v. Broce Constr. Co.*, 357 F.2d 242, 245 (10th Cir. 1966), which shifts the burden of showing that domicile and citizenship are elsewhere to the defendants, *Kelleam*, 112 F.2d at 943.

The affidavits and documentation submitted by Mr. and Mrs. Hildyard explain that they entered into a Memorandum of Understanding with Michael Tullis of Midway Capital, LLC (a Utah corporation) wherein Midway was to provide the financing and capital for the project. The Hildyards understood that they, Mr. Tullis, defendant Smith, and Richard Bennion owned the company as its members. The affidavits submitted by the Hildyards state that they were told that other members of the LLC were domiciled, at least at some times, in Utah, and that they do not know where the other members were domiciled. Notably, however, Mr. Hildyard signed the Limited Liability Company Annual Report discussed above which listed no one other than the Hildyards as members of the LLC. The Memorandum of Understanding sheds light on the intended structure of the LLC. It states that the LLC would issue member interests that would effectively result in the Hildyards owning thirty percent of the LLC and Midway owning seventy percent. But, of course, the annual report signed by Mr. Hildyard does not list Midway as owning seventy percent. Additionally, the LLC's Articles of Organization list Mrs. Hildyard as its manager and the Articles of Organization are signed by Mrs. Hildyard. Significantly, despite the fact that Mr. Hildyard signed the LLC's annual report which did not disclose any other members of the LLC and the fact that Mrs. Hildyard was the manager of the LLC, there is no evidence that Mr. or Mrs. Hildyard ever actually transferred any part of their interest in the LLC to any

other entity or that the LLC ever issued any other member interests.  Given the clarity of the

Hildyard's involvement in the LLC and their failure to identify any person or entity who was

actually a member of the LLC and who is not domiciled in Kansas, then, they have failed to

rebut plaintiff's proof that the LLC must be deemed to be a citizen of the Kansas.  As such,

the court finds that the allegation in HFR's complaint that no members of the LLC are

domiciled in Tennessee and all (known) members are citizens of Kansas is supported by the

record.  Moreover, defendants have presented no evidence that at the time this lawsuit was

filed any member of the LLC stood in a non-diverse relationship to HFR.  Accordingly,

complete diversity exists between the plaintiff and the defendants in this case.

> B.    <u>Amount in Controversy</u>

For purposes of determining the amount in controversy, the amount claimed by the

plaintiff controls if the claim is apparently made in good faith.  *St. Paul Mercury Indem. Co.

v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *Adams v. Reliance Std. Life Ins. Co.*, 225 F.3d

1179, 1183 (10th Cir. 2000).  When federal subject matter jurisdiction is challenged based

on the amount-in-controversy requirement, plaintiffs must show that it does not appear to a

legal certainty that they cannot recover at least $75,000.  *Watson v. Blankinship*, 20 F.3d 383,

386 (10th Cir. 1994).  In other words, the plaintiff must demonstrate that it is not legally

certain that the claims are less than the jurisdictional amount.  *Woodmen of the World Life

Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003).  The legal certainty standard

is strict; dismissal is generally warranted only where (1) a contract limits the possible

recovery, (2) the law limits the amount recoverable, or (3) the plaintiff commits an obvious

abuse of federal court jurisdiction. *Id.* at 1216-17.

Here, defendants contend that the law limits the amount recoverable because HFR is

not entitled to the contract termination fee sought in its complaint.  To put the matter in

context, plaintiff's complaint prayed for $81,303.09 plus interest.  This amount breaks down

as follows: $46,950 for the CAD drawing and design development phases, $560.59 for

reimbursable expenses, and $33,792.50 for contract termination fees.  Defendants contend

that the termination fee is an unenforceable penalty.  According to defendants, then, plaintiff

is not legally entitled to recover the $33,792.50 termination fee, reducing the amount

recoverable for actual fees for services to less than $50,000, which is well below the $75,000

amount-in-controversy requirement.    HFR disputes defendants' suggestion that the

$33,792.50 termination fee should be characterized as an unenforceable penalty.  Instead,

HFR contends that this amount represents liquidated damages of a sum in lieu of

performance.

The parties to a contract may stipulate to a set damages amount for breach of the

contract as long as the provision constitutes a liquidated damages clause and not a penalty.

*IPC Retail Props., L.L.C. v. Oriental Gardens, Inc.*, 32 Kan. App. 2d 554, 561, 86 P.3d 543,

548 (2004).  The distinction between a penalty and a provision for liquidated damages is that

a penalty is in effect a security for performance, while a provision for liquidated damages is

for a sum to be paid in lieu of performance.  *Id.*  The propriety of such a provision is a

question of law.  *Id.*  But, it is a determination that must be made based on the facts of the

case by considering the instrument as a whole, the situation of the parties, the nature of the subject matter, and the circumstances surrounding its execution. *Id.* The only explanation for the termination fee is a letter from HFR explaining the final invoice. It states as follows: "We have also added a line item for termination expenses per the contract article 8.7. We have estimated our anticipated profit on the remaining design fee at a conservative 10% of the value of the services not performed or $33,792.50 . . . ." Taken at face value as the only evidence concerning the nature of the termination fee, it appears at first blush to be a liquidated damages provision for a sum to be paid in lieu of performance. The undeveloped factual record is too incomplete for the court to definitively resolve the issue of whether the termination fee represents liquidated damages or an unenforceable penalty. But, suffice it to say at this procedural juncture that plaintiffs have shown that it does not appear to a legal certainty that they cannot recover the termination fee. Thus, this amount is properly included in their good faith claim for damages and the $75,000 amount-in-controversy requirement is satisfied. Accordingly, the court rejects defendants argument that they are entitled to relief under Rule 60(b)(4) on the grounds that the judgment is void for lack of subject matter jurisdiction.

## II.     Judgment Against the Hildyard Defendants

The Hildyard defendants ask the court to set aside the default judgment under Rule 60(b)(1) of the Federal Rules of Civil Procedure on the grounds of excusable neglect. A motion under Rule 60(b)(1) must be made "within a reasonable time" and, in any event, not more than one year after judgment was entered. Fed. R. Civ. P. 60(c)(1). Here, judgment

9

was entered on December 13, 2006, *see* Order (doc. #19), and the Hildyards filed their motion on October 12, 2007, which was within a year of the judgment. Nonetheless, a motion is not timely merely because it has been filed within a year of the judgment. *White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1425 (10th Cir. 1990). Where a party delays in filing a Rule 60(b) motion after discovery of the grounds for the motion, it must offer a sufficient justification for the delay. *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1178 (10th Cir. 2005); *White*, 915 F.2d at 1425.

Plaintiff argues that the Hildyard defendants had numerous opportunities to learn of the claims against them by virtue of receiving notice of the lawsuit and various documents filed therein which were served on them. But this much could presumably be said for any case in which default judgment is entered against a defendant. The critical inquiry is the justification for the delay from the entry of default judgment and the motion to set that judgment aside. Here, judgment was entered on December 13, 2006. In an effort to enforce the judgment, on June 12, 2007, plaintiff filed a Notice of Filing Foreign Judgment in the state courts of Utah and the clerk of court mailed that notice to the Hildyards that same day. The Hildyards do not recall receiving any such notice, however. The second week of August of 2007, Robert Smith informed them that a judgment had been entered against them in their personal capacities and that HFR had filed a judgment lien against their home. According to Mrs. Hildyard, "[w]ithin a week, or at most two, of discovering the lien and personal judgment," she began trying to retain counsel. In late September of 2007, present counsel agreed to represent them and their current motion to set aside the default judgment was filed

10

on October 12, 2007. Although the Hildyard's reaction time was less than ideal, they have provided a sufficient justification for the delay. The court therefore finds that their motion to set aside the default judgment was filed within a reasonable time after entry of the judgment.

Turning to the grounds for the motion, Rule 60(b)(1) provides that the court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." In *Pioneer Investment Servs. Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), the Supreme Court held that the determination of what constitutes excusable neglect is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. In making this determination, the court must consider the following four factors: (1) the risk of prejudice to the non-movant, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was in control of the movant, and (4) whether the movant acted in good faith. *Id.* at 395-97. These factors are of course not exclusive. *Id.* at 395-96. While *Pioneer* involved "excusable neglect" under Bankruptcy Rule 9006(b)(1), the Courts of Appeals have applied the same test under the "excusable neglect" standard of Rule 60(b)(1), *see, e.g.*, *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007); *George Harms Constr. Co. v. Chao*, 371 F.3d 156, 163 (3d Cir. 2004); *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2000); *Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 359 (7th Cir. 1997), and the court believes the Tenth Circuit would follow suit. The burden is on the party moving to set aside

11

the default judgment to plead and prove excusable neglect.  *Pelican Prod. Corp.*, 893 F.2d at 1146.

According to the Hildyards, they sought the advice of counsel immediately after they were served with the original complaint.  The only defendant named in that complaint was defendant Northwest Kansas Regional Medical Center, L.L.C.  In a letter dated August 15, 2005, they received the following advice in a letter from Thomas A. Hamill of the law firm of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P.:

> [N]either of you have been named as defendants in the lawsuit referenced above. . . .
>
> In the lawsuit referenced above, the Plaintiff is seeking a judgment only against the Limited Liability Company that is Northwest Kansas Regional Medical Center.  No claim has been asserted against either of you individually.  Also, based upon our conversations, **I see no basis for any individual claim which could be asserted [against] either of you in the future.**  If such claims are asserted at sometime in the future, however, you will have to receive notice of these claims.

(Emphasis added.)  The Hildyards explain that they understood the emphasized statement to mean that they could not be sued personally for the claims against defendant Center.  This advice confirmed their beliefs that they could not be held personally liable under the contract, as it was their understanding that Midway had asked defendant Robert Smith to retain an architect, but neither the Hildyards nor Center had authorized Mr. Smith to enter into an architectural contract with HFR on their behalf.  When the Hildyards received the first amended complaint naming them as defendants, they still believed that Mr. Hamill's legal advice meant that they were not at any risk of personal liability for the Center's debt.  The Hildyards contend that they honestly misunderstood Mr. Hamill's letter to mean that they did

not need to defend themselves even against the later-filed complaint; they did not consciously elect to defy the court or allow judgment to be entered against them personally; they were just totally unfamiliar with the legal concept of veil piercing.

HFR contends that other lawsuits and proceedings involving Mr. Hildyard demonstrate that he was well aware of the legal process and that he simply chose to ignore the complaint filed against him in this matter. But, as explained above, the court disagrees. The Hildyards consulted counsel concerning this matter and misunderstood the advice they were given to mean that they were not at risk of personal liability. The court is not without sympathy that counsel for HFR has undoubtedly suffered frustration by unsuccessfully trying to get the Hildyards to appear in this lawsuit and subsequently trying to collect on the default judgment. Additionally, the Hildyards' lengthy delay in finally appearing in this case nearly two years after they were originally served has inconvenienced the court and the other parties involved in this lawsuit. Nonetheless, the court is satisfied that they have offered a reasonable explanation for the delay in that they had a good faith belief, after consultation with counsel, that there was not a legitimate basis for them to be held personally liable under the contract. The court is mindful of the disfavored status of default judgments. *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990). And, under these circumstances, the court finds that the Hildyards have demonstrated excusable neglect sufficient to warrant relief under Rule 60(b)(1).

In addition to satisfying one of the grounds stated in Rule 60(b), in default judgment cases the movant must also demonstrate the existence of a meritorious defense. *Greenwood*

*Explorations, Ltd. v. Merit Gas & Oil Corp.*, 837 F.2d 423, 427 (10th Cir. 1988); *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1445 (10th Cir. 1983).  In determining whether the movant has a meritorious defense, the court examines whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense to the action.  *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978).  The focus is on the sufficiency of the factual statement contained in the moving papers, which contemplates more than mere legal conclusions, general denials, or simple assertions that the movant has a meritorious defense.  *Id.*  For essentially the same reasons underlying Mr. Hamill's advice to the Hildyards and their subsequent failure to originally appear in this action, the Hildyards appear to have a potentially meritorious defense to HFR's claims against them if their version of the facts is true.  They do not believe that they can be held liable on the contract because Mr. Smith's actions in entering into the architectural contract were never authorized, approved, or ratified by them or the LLC.  Additionally, they have submitted affidavits suggesting that HFR will not be permitted to pierce the corporate veil so as to hold them personally liable for any debts or obligations of the LLC.  They also intend to pursue their argument that the termination fee is an unenforceable penalty clause under Kansas law.  Because their version of the facts raises the possibility that the outcome of the suit after a full trial on the merits might be different than the result achieved by default, they have demonstrated that they are entitled to relief under Rule 60(b)(1).  On that basis, then, the court will set aside the default judgment against them.

### III.      Judgment Against Defendant Robert Smith

14

Defendant Robert Smith moves the court to set aside the judgment against him pursuant to Rules 60(b)(1), (4) and/or (6) on the grounds that he was not given notice as required by Fed. R. Civ. P. 55(b)(2), which requires a party seeking a default judgment to provide at least three days' advance written notice to any party that has "appeared in the action" and against whom judgment is sought.  Fed. R. Civ. P. 55(b)(2).  It is undisputed that defendant Smith was not provided with any such notice and he did not formally appear in this case before HFR obtained the default judgment.  Notwithstanding this, he contends that an informal communication that he faxed to counsel for HFR after he was served with the summons and second amended complaint in this action constituted an appearance sufficient to entitle him to notice under Rule 55(b)(2).  Insofar as Mr. Smith contends that this constitutes grounds for relief under Rule 60(b)(4), his argument is without merit because any such arguable notice deficiency would not render a judgment void.  *Winfield Assocs., Inc. v. Stonecipher*, 429 F.2d 1087, 1091 (10th Cir. 1970).  Thus, the court considers the motion pursuant to Rule 60(b)(1) & (6).

As such, the motion must have been made "within a reasonable time."  Fed. R. Civ. P. 60(c)(1).  Defendant Smith first learned about the default judgment on June 16, 2007, when he was notified by his counsel in Utah that judgment had been entered against him in this matter.  He filed the current motion to set aside the default judgment on September 10, 2007.  In the memorandum in support of his motion, he explains that once he became aware of the judgment in favor of HFR, he took steps to obtain and understand the judgment entered against him, obtained references for counsel in Kansas, retained counsel licensed in Kansas,

15

and prepared and executed the affidavit submitted in support of his motion.  This is a sufficient explanation for the delay of less than three months between the time he learned about the default judgment to the time when the current motion to set aside the default judgment was filed.  Accordingly, the court finds that the motion was filed within a reasonable time.

The pivotal issue is whether Mr. Smith's alleged communication to counsel for HFR constituted an "appearance" so as to entitle him to notice under Rule 55(b)(2).  Circuits are divided on whether something less than a formal appearance triggers Rule 55(b)(2)'s notice requirement.  *New York v. Green*, 420 F.3d 99, 105 (2d Cir. 2005).  The prevailing view is that the rule applies not only to parties who have formally appeared, but also to those who have otherwise indicated to the moving party a clear purpose to defend the suit.  *Id.* (noting that the Fifth, Sixth, Ninth, and District of Columbia Circuits have adopted this approach whereas, by contrast, the Seventh Circuit strictly construes the term "appearance" in this rule to require a formal submission to the court).  The rationale behind the prevailing approach is that it is "consistent with 'the policy underlying the modernization of federal procedure, namely, the abandonment or relaxation of restrictive rules which prevent the hearing of cases on their merits.'"  *Id.* (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curiam)).  Given the well settled federal policy favoring the resolution of lawsuits on their merits, *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1272 (10th Cir. 2001); *Gocolay v. N.M. Fed. Sav. & Loan Ass'n*, 968 F.2d 1017, 1021 (10th Cir. 1992), the court believes that the Tenth Circuit would adopt this prevailing

16

view.  Consequently, the court must determine whether defendant Smith indicated to counsel for HFR a clear purpose to defend the suit.

The court has no difficulty concluding that the letter Mr. Smith claims to have faxed to counsel for HFR "[w]ithin approximately a week of receiving the summons" expresses a clear intent to defend the lawsuit against him.  In the letter, Mr. Smith explained that he had "no liability in this matter" because he was retained as a consultant on the project by Midway Capital, LLC, a Utah corporation that is owned by Michael Tullis.  He explained that Midway Capital "provided funds to defray costs associated with the Colby project until May of 2004 when it ceased to do so, leaving the architect, general contractor, your client, and myself with considerable unpaid fees."  He stated that HFR's "recourse is to Michael Tullis, not [him]."  According to Mr. Smith, the Hildyards created Northwest Kansas Regional Medical Center, LLC into which Mr. Tullis was to deposit funds to defray project expenses.  Mr. Smith and the Hildyards believed that Mr. Tullis would meet his obligations under a Memorandum of Understanding.  The letter concludes that "[w]e feel we are just as aggrieved as your client."  Ordinarily, "the default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *H.F. Livermore Corp.*, 432 F.2d at 691.  The overall thrust of this letter is anything but "unresponsive."  Instead, Mr. Smith responded to the allegations against him by providing counsel for HFR with an explanation as to why he believed HFR should be pursuing someone other than him to collect the fees.  The critical point is that Mr. Smith expressed an intent to defend the claims against him that was sufficiently clear that he should

have been given notice and an opportunity to defend against HFR's motion for entry of a default judgment.

What is not clear from the record, however, is whether Mr. Smith actually faxed this letter to counsel for HFR.  He has submitted an affidavit which states that he faxed this letter to counsel for HFR.  But, on the other hand, counsel for HFR has submitted an affidavit that he never received this letter or any other communication from Mr. Smith.  Notably, the letter is addressed "To Whom It May Concern," as opposed to plaintiff's counsel specifically.  The letter is not on letterhead, it is not dated, it does not bear a facsimile transmission line indicating that it was transmitted around this time period in 2006, and it is not accompanied by a fax cover sheet or any other paperwork confirming that it was actually sent or received. Consequently, it is disputed whether Mr. Smith actually sent this letter to counsel for HFR. The court must resolve this factual dispute in order to determine whether Mr. Smith "appeared" in this action such that he was entitled to three days' advance written notice under Rule 55(b)(2).  Accordingly, the court hereby sets this disputed factual issue for an evidentiary hearing at **9:30 a.m. on Thursday, January 3, 2008**.

Finally, the court notes that it appears that Mr. Smith has potentially meritorious defenses to HFR's claims against him.  He contends that he fully disclosed to HFR the pertinent facts about Center being a newly formed entity.  Additionally, he points out that HFR still has not provided a copy of the contract to the court, suggesting that its claims might very well be barred by the statute of frauds.  Thus, his version of the facts raises the possibility that the outcome of the suit after a full trial on the merits might be different than

18

the result achieved by default.  Consequently, whether Mr. Smith is entitled to relief depends on resolution of the disputed factual issue set forth above.

**IT IS THEREFORE ORDERED BY THE COURT** that the Hildyard defendants' Motion to Set Aside Default Judgment (doc. #24) is granted.

**IT IS FURTHER ORDERED** that defendant Smith's Motion to Set Aside Default Judgment (doc. #21) is taken under advisement and is set for an evidentiary hearing at **9:30 a.m. on Thursday, January 3, 2008**.

**IT IS SO ORDERED** this 13th day of December, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge